O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANDRES ADAME et al, | ) | Case No. EDCV 15-02232 DDP (KKx) |
| Plaintiffs, | ) | **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING DEFENDANTS' MOTION TO TRANSFER VENUE AS MOOT** |
| v. | ) | |
| COMTRAK LOGISTICS, INC., et al, | ) | [Dkt. Nos. 12, 13, 15] |
| Defendants. | ) | |

Presently before the Court are (1) Defendants' Motion to Transfer Venue to Western District of Tennessee; and (2) Plaintiffs' Motion to Remand and Request Attorneys' Fees. (Dkt. Nos. 13, 15.) After considering the parties' submissions, the Court adopts the following Order.

**I.   BACKGROUND**

This employment law case alleges that Defendants, who are trucking companies and individuals who work for those companies, violated several California employment laws by treating Plaintiff truck drivers as independent contractors rather than employees. (Notice of Removal, Dkt. No. 1, ¶¶ 1-3.)  The case was originally

filed in the California Superior Court for San Bernardino County and it alleges solely a Private Attorney General Act ("PAGA") cause of action for underlying California Labor Code violations. (Id. ¶ 1, Ex. A (Compl.).) Defendants removed to federal court and filed a notice of related case in both the state and federal courts, citing Robles v. Comtrak Logs., Inc., No. 2:15-cv-02228-SHM-tmp (W.D. Tenn.). (Notice of Removal, Dkt. No. 1, ¶ 6, Ex. D.) Defendants claim that there are the same Defendants in both cases and the plaintiffs all allege the same Labor Code violations based on misclassification. (Id.)

Defendants allege in the Notice of Removal that three of the individual Defendants named in the complaint are "sham" defendants so that their California citizenship should not be considered for determining subject matter jurisdiction. (Id. ¶ 10.) Defendants claim that none of the five individuals are "employers" under the applicable law, so they cannot be held liable for the violations of the Labor Code alleged and their citizenship is not considered for diversity of citizenship purposes. (Id.)

According to Defendants, Defendants David Yeager and Dan Burke are residents of Illinois and are employed by Defendants in Illinois. (Id. ¶ 16.) Defendants Lorena Rodriguez, Johnny Moreno, and Ryan Kotaka are residents of California and are or were employed by Hub Group Trucking, Inc., based in either Ontario or Stockton, California. (Id. ¶ 17.)

For their part, Plaintiffs alleged Defendant Comtrack Logistics, Inc., is a Delaware corporation with a principal place of business in Illinois, but who maintains two terminals in California, one in Stockton and one in Ontario. (Compl. ¶ 76.)

2

Defendant Hub Group, Inc., is alleged by Plaintiffs to be a Delaware corporation with a principal place of business in Illinois, and to have acquired Comtrak Logistics in 2006. (Id. ¶ 77.)  Defendant Hub Group Trucking, Inc., Plaintiffs allege, is a Delaware corporation with a principal place of business in Illinois,[1] and is the same company as that formerly known as "Comtrak Logistics, Inc.," just with a new name since 2014. (Id. ¶ 78.)

    Plaintiffs allege Defendant David Yeager is or was the CEO of Hub Group, Inc., and Director of Hub Group Trucking, Inc., and was "directly involved in the creation, negotiation and execution of independent contractor agreements with Plaintiffs." (Id. ¶ 79.) Defendant Dan Burke is alleged to have been Chief Intermodal Officer for Hub Group, Inc., President of Hub Group Trucking, Inc., and "directly involved in Comtrack's efforts to settle wage and hour claims with individual drivers, including attempted waivers of rights to bring PAGA claims," as well as involved in the independent contractor agreements as was Yeager. (Id. ¶ 80.)

    Defendant Lorena Majarro (aka Lorena Rodriguez) is alleged to be Manager of Hub Group Trucking, Inc., and Comtrak Logistics, Inc., and was alleged to be involved in both the independent contractor agreements and the settlements. (Id. ¶ 81.) Defendant Johnny Moreno was Operations Manager of Hub Group Trucking, Inc., and Comtrak Logistics, Inc., and was also allegedly involved in both the agreements and settlements. (Id. ¶ 82.)  Lastly, Defendant Ryan Kotaka is alleged to be the Terminal Manager of Hub

---

[1] Defendants claim Hub Group Trucking's principal places of business are Tennessee and Illinois. (Notice of Removal ¶ 15.)

3

Group Trucking, Inc., and Comtrak Logistics, Inc., and involved in both the agreements and settlements. (Id. ¶ 83.)

Plaintiffs also claim that their PAGA claims are brought against Defendants as individual persons, not just as employers, under Labor Code section 558. (Id. ¶¶ 201-202.)

Plaintiffs are sixty-three individuals who worked for Defendants. They all allege that they were misclassified as independent contractors, and thus were denied benefits and protections of the California Labor Code. (Compl. ¶¶ 12-75.) They all claim to be citizens of California.[2] (Id.)

The complaint alleges that Defendants "willfully misclassified Plaintiffs as independent contractors in violation of Labor Code sections 226.8 and 2753; failed to properly pay Plaintiffs in violation of Labor Code sections 204, 210, 221-223, 225.5, 558, 1182.12, 1194, and 117, as well as section 4 of Wage Order number 9 promulgated by the Industrial Welfare Commission ("IWC Wage Order No. 9"); failed to pay for employment-related expenses in violation of Labor Code section 2802 and IWC Wage Order No. 9 sections 8-9; failed to provide proper meal and rest breaks in violation of Labor Code sections 226.7, 512, and 516, and IWC Wage Order No. 9 sections 11-12; failed to provide proper wage statements by not maintaining documentation of hours worked and wages earned, and failing to pay the wages due in violation of Labor Code sections 1174 and 201-203, and IWC Wage Order No. 9 section 7. (Compl. ¶¶

---

[2] Defendants claim that their research shows all but one Plaintiff resides in California. The out-of-state Plaintiff is alleged to reside in Georgia, where no Defendant is a citizen. (Notice of Removal ¶ 13.)

4

2-10.) Plaintiff seek penalties under PAGA, Labor Code section 2699. (Id. ¶ 10.)

Plaintiffs allege that around August 2014, Defendants held "mandatory meetings" with their California drivers where the drivers were told that the company was converting the drivers from independent contractors to employees. (Id. ¶ 148.) Plaintiffs allege that the drivers were not told the purpose of the meetings in advance and were offered settlements, with prepared checks, on the spot if they signed releases of claims like those alleged in this litigation. (Id.) The settlements were offered alongside the paperwork to convert to employee status, the latter paperwork required to maintain a work relationship with Defendants unless the driver bought Defendants out of the lease on their truck. (Id. ¶¶ 149-50.) Drivers were also allegedly told that the trucks had to pass certain tests and that if the trucks failed, it would require a large sum of money to resolve. (Id. ¶ 151.) Plaintiffs claim that the discussion of the settlement was "materially misleading" and that any release signed by any Plaintiff here — or any other driver — is void and unenforceable. (Id. ¶¶ 152-53.)

Plaintiffs claim to have exhausted administrative remedies by providing written notice to the Labor and Workforce Development Agency ("LWDA") and Defendants of the alleged violations. (Id. ¶ 154.)

Now, Plaintiffs have filed a Motion to Remand the case to California Superior Court, arguing that the Court lacks subject matter jurisdiction because there is not complete diversity of citizenship and Defendants have not shown that the amount in controversy is met. (Dkt. No. 15, Mot. Remand.) Defendants have

simultaneously filed a Motion to Transfer Venue to Western District of Tennessee.  (Dkt. No. 13, Mot. Transfer.)

## II.  LEGAL STANDARD

### A.  Motion to Remand

A defendant may remove a case from state court to federal court if the case could have originally been filed in federal court.  28 U.S.C. § 1441(a).  There is a "strong presumption" against removal and the defendant has the burden of establishing that removal is proper by a preponderance of evidence.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); Morrison v. Zangpo, No. C-08-1945 EMC, 2008 WL 2948696, at *1 (N.D. Cal. July 28, 2008).  A defendant has thirty days in which to remove the case after receiving, "through service or otherwise, . . . a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b)(1).  Likewise, a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."  28 U.S.C. § 1447(c).

### B.  Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  A forum-selection clause is enforceable through a motion to transfer venue under Section 1404(a).  Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Tex., 134 S. Ct. 568, 579 (2013).  "[A] proper application of § 1404(a) requires that a

6

forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" Id. (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988)). When there is a valid forum-selection clause, the court's analysis changes from a typical motion to transfer venue in three ways: (1) the plaintiff's choice of forum is not considered; (2) the private interests or inconvenience of the parties are not given any weight; and (3) the transfer of venue does not entail the usual rule that the original venue's choice-of-law rules will apply in the new venue. Id. at 581-82.

**III. DISCUSSION**

    **A.   Motion to Remand**

Plaintiffs argue this Court lacks subject matter jurisdiction over the case because there is no diversity jurisdiction: at least one defendant is a citizen of California, as are the plaintiffs and the real party in interest, the state of California; further, the amount in controversy is not satisfied. (Mot. Remand at 3.) Plaintiffs argue that the Court should not consider the citizenship of the individual Plaintiffs because the real party in the action is the state of California in a PAGA suit, and a state is not a citizen for purposes of diversity jurisdiction. (Id. at 4-5 (citing Urbino v. Orkin Servs. of Cal., Inc., 726 F.3d 1118, 1122-23 (9th Cir. 2013).)

To the extent the Court does consider the individual Plaintiffs, Plaintiffs argue there are nondiverse Defendants who are not "sham" because they are subject to civil penalties under PAGA for causing Labor Code violations. (Id. at 6-7 (citing

7

1  Velasquez v. HMS Host USA, Inc., No. 2:12-cv-02312-MCE-CKD, 2012 WL
2  6049608 (E.D. Cal. Dec. 5, 2012); Ontiveros v. Zamora, No. CIV S-
3  08-567 LKK/DAD, 2009 WL 425962, at *6 (E.D. Cal. Feb. 20, 2009).)
4      Further, Plaintiffs argue that Defendants have not shown the
5  amount in controversy is met because Defendants cannot aggregate
6  the pro rata share of the individual Plaintiffs, who all expect as
7  damages less than $75,000, and cannot aggregate the share of one
8  individual Plaintiff with the share for the state.  (Id. at 8-10
9  (citing Lopez v. Ace Cash Express, Inc., No. LA CV11-07116 JAK
10 (JCx), 2015 WL 1383535, at *3-5 (C.D. Cal. Mar. 24, 2015); Pulera
11 v. F & B, Inc., No. 2:08-cv-00275-MCE-DAD, 2008 WL 3863489, at *3
12 (E.D. Cal. Aug. 19, 2008).)  Lastly, Plaintiffs seek attorneys'
13 fees and costs of $10,000 for bringing their Motion, arguing that
14 Defendants' removal was without legal basis in a private attorney
15 general action.  (Id. at 10-12.)
16     Defendants respond that the state is not a party for the
17 purposes of diversity jurisdiction.  (Dkt. No. 23, Opp'n at 1-2, 3-
18 9 (citing Archila v. KFC U.S. Props., Inc., 420 F. App'x 667, 668-
19 69 (9th Cir. 2011)).)  Defendants analogize to qui tam suits
20 brought under the federal False Claims Act, where the Supreme Court
21 has stated that the United States is not considered a party to the
22 action despite being a real party in interest and entitled to a
23 share in the award.  (Id. at 4-5.)  They further distinguish
24 Plaintiffs' cases and argue that there is no binding holding for
25 the proposition that the state is the party for purposes of
26 diversity citizenship and therefore destroys federal jurisdiction.
27 (Id. at 6-9.)
28

Further, Defendants argue that the individual Defendants are "sham" Defendants because PAGA claims are against an employer, which does not include a corporate agent under California law. (Id. at 2; 9-13 (citing Martinez v. Combs, 231 P.3d 259 (Cal. 2010)).) Defendants claim that Plaintiffs' reliance on Labor Code section 558 is misplaced because Plaintiffs are still limited by the definition of employer in PAGA suits as provided by Martinez. (Id. at 11-12.) The allegations against the individual Defendants are also insufficient to establish they caused the Labor Code violations in any case. (Id. at 13.) And Defendants claim that the Court should aggregate an individual Plaintiff's 25% share of potential penalties with LWDA's 75% share, which would exceed $75,000 and satisfy the amount in controversy requirement. (Id. at 13-17 (citing Patel v. Nike Retail Servs., Inc., 58 F. Supp. 3d 1032 (N.D. Cal. 2014)).) Lastly, Defendants argue the request for attorneys' fees and costs should be denied because they had an "objectively reasonable basis" for removal, which was not "clearly foreclosed" by binding law, particularly because PAGA claims raise complex issues. (Id. at 2-3; 17-19.)

**1. Diversity Jurisdiction and Remand Standard**

Diversity jurisdiction requires complete diversity of the parties' citizenship and satisfaction of the amount in controversy requirement, which is over $75,000. 28 U.S.C. § 1332. Because diversity jurisdiction is an original basis of a federal court's jurisdiction, a defendant can remove a case to federal court if the case satisfies the requirements of diversity jurisdiction. See 28 U.S.C. § 1441(a). However, federal courts "strictly construe the removal statute against removal jurisdiction" and "[f]ederal

9

jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Defendants here removed this case on the basis of diversity jurisdiction. They claim that there is complete diversity of citizenship because the three California-citizen Defendants are "sham" defendants under California law. Further, they claim that the amount in controversy is satisfied because courts can consider the total potential PAGA penalty for alleged violations of California's Labor Code as to each individual plaintiff under Ninth Circuit and district court cases. Plaintiffs contest these two grounds, relying on Urbino and other district court cases.

### 2. The Urbino Decision

The Ninth Circuit in Urbino was faced with the question of "whether the penalties recoverable on behalf of *all* aggrieved employees may be considered in their totality to clear the jurisdictional hurdle" of $75,000 amount in controversy. Urbino, 726 F.3d at 1122. The court held that "diversity jurisdiction does not lie because their claims cannot be aggregated" and there was "no dispute that Urbino's individual potential recovery would not meet the $75,000 threshold." Id.

The court's reasoning rested on the "anti-aggregation" rule: "multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement." Id. (citing Troy Bank v. G.A. Whitehead & Co., 22 U.S. 39, 40 (1911)). In representative actions, aggregation only occurs when the plaintiffs' claims "are derived

10

from rights that they hold in group status" such that "they have a common and undivided interest." Id. (quoting Snyder v. Harris, 394 U.S. 332, 335 (1969); Eagle v. Am. Tel. & Tel. Co., 769 F.2d 541, 546 (9th Cir. 1985)) (internal quotations omitted). "[A]n interest is common and undivided when 'neither [party] can enforce [the claim] in the absence of the other.'" Id. (quoting Troy Bank, 222 U.S. at 41).

Applying those principles to the PAGA case before it, the court in Urbino found that aggrieved employees under PAGA have other causes of action to vindicate their rights and rectify their employer's violations of California's Labor Code, but "all of these rights are held individually." Id. Each employee has a "unique injury" that can be "redressed without the involvement of other employees." Id. Therefore, the court found that the claims of the different aggrieved employees could not be aggregated. Id.

The defendant argued that Urbino's interest was not individual but "the state's collective interest in enforcing its labor laws through PAGA." Id. Thus, the defendant was arguing that this was a case were aggregation was appropriate because there was a single plaintiff aggregating multiple of his own claims against a single defendant, which is allowed to satisfy the amount in controversy requirement. Id. The court responded:

> To the extent Plaintiff can — and does — assert anything but his individual interest, however, we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirements of federal diversity jurisdiction. The state, as the real party in interest, is not a citizen for diversity purposes.

Id. at 1122-23 (citing Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980) (stating courts "must disregard nominal or formal parties

11

and rest jurisdiction only upon the citizenship of real parties to the controversy"); Moor v. Cnty. of Alameda, 411 U.S. 693, 717 (1973) (explaining that "a State is not a 'citizen' for purposes of the diversity jurisdiction")). The court concluded that "federal courts lack subject matter jurisdiction over this quintessential California dispute." Id. at 1123.

As the Ninth Circuit reiterated in a later case holding that PAGA actions did not have original jurisdiction in federal courts under the Class Action Fairness Act ("CAFA"), the court in Urbino "held that potential PAGA penalties against an employer may not be aggregated to meet the minimum amount in controversy requirement of 28 U.S.C. § 1332(a)." Baumann v. Chase Inv. Servs. Corp., 747 F.3d 1117, 1119 (9th Cir. 2014). In Baumann, the Ninth Circuit noted that under Urbino, what is considered for calculating the amount in controversy is the individual plaintiff's "portion of any recovery (including fees)." Id. at 1120 n.1.

### 3. Application of Urbino

All the parties admit here that the individual Plaintiffs cannot aggregate their potential PAGA penalties for the purposes of satisfying the amount in controversy. The key dispute is whether the court can aggregate an individual Plaintiff's share (his 25%) with the share that goes to the state (the LWDA's 75%). According to Defendants' estimates, which were not disputed by Plaintiffs in their Opposition, if all the alleged Labor Code violations occurred on a weekly basis for the year-long PAGA period and there was a willful misclassification as a result of pattern or practice, the maximum total a Plaintiff could potentially receive would be $183,050. (Notice of Removal ¶¶ 43-45; Mot. Remand at 10; Opp'n at

17 n.12.)  If the Court only considers an individual plaintiff's 25% share of that potential penalty, it would be $45,762.50, plus fees, which Defendants argue would also raise the amount in controversy to over $75,000.  (See Opp'n at 17 n.12.)  Plaintiffs have only asked for $10,000 in attorneys' fees and costs in bringing this motion, and it is unclear what are the fees and costs accrued prior to the motion.[3]

There are conflicting district court cases, some of which are cited by Plaintiffs and Defendants in their briefing, as to whether the state's portion of potential PAGA penalties can be aggregated with an individual plaintiff's portion of the penalties.  All are grounded in the Urbino decision, the policies of PAGA, and the question of whether a state's interest, unlike those of other individual plaintiffs, is a common and undivided interest with a particular individual plaintiff for purposes of aggregating penalties. Compare, e.g., Lopez v. Ace Cash Express, Inc., No. LA CV 11-07116 JAK (Jcx), 2015 WL 1383535 (C.D. Cal. Mar. 24, 2015) (holding that the state's 75% share is not aggregated); Willis v. Xerox Bus. Servs., LLC, No. 1:13-cv-01353-LJO-JLT, 2013 WL 6053831, at *8-9 (E.D. Cal. Nov. 15, 2013) (slip op.) (same), with, e.g., Patel v. Nike Retail Servs., Inc., 58 F. Supp. 3d 1032 (N.D. Cal. 2014) (holding that the state's 75% share can be aggregated with an individual plaintiff for purposes of satisfying the amount in controversy); Mitchell v. Grubhub Inc., No. CV 15-05465-BRO (Asx),

---

[3] As another point of uncertainty, the Ninth Circuit has not determined whether all attorneys' fees are aggregated as to an individual plaintiff, or whether the proper measure would be a portion of the attorneys' fees attributable to an individual plaintiff.  See Mitchell v. Grubhub Inc., No. CV 15-5465-BRO (Asx), 2015 WL 5096420 (C.D. Cal. Aug. 28, 2015) (slip op.).

2015 WL 5096420, at *5-6 (C.D. Cal. Aug. 28, 2015) (slip op.) (same).

Thus, the law is unclear for determining the amount in controversy in these PAGA cases as to the state's share and an aggrieved employee's share. The question was not before the Ninth Circuit in Urbino and the logic underlying the decision could point in either direction, as amply demonstrated in the many conflicting cases in the district courts of the Circuit. The more persuasive line of cases to this Court is the line that did not aggregate the state's share with the aggrieved employee's share. This is based on the language in Urbino disfavoring jurisdiction and stating that the state is not considered for jurisdiction purposes, as well as the PAGA statute itself which takes the total penalty award — not an individual plaintiff's share — and then allots 75% of the total to the state and 25% to all aggrieved employees, not just an individual representative plaintiff. And, since the matter is unclear, the Court finds that the presumption against diversity jurisdiction also weighs in favor of remand.

### 4. Individual California Defendants

There is a also a substantial question as to the allegedly "sham" defendants that weighs in favor of remand on the basis of lacking complete diversity of citizenship. That is, it is unclear whether the three individual California Defendants can be liable for the alleged offenses under California law.

In Martinez v. Combs, 49 Cal. 4th 35 (2010), the California Supreme Court adopted the IWC's definition of "employer" rather than solely the common law description of employment relationships in actions under section 1194 of the Labor Code. Id. at 52, 62,

14

66. The court explained that the IWC defined an employer as "a person who 'employs or exercises control over the wages, hours, or working conditions of any person.'" Id. at 59.  Put another way: "To employ then, under the IWC's definition, has three alternative definitions.  It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship."  Id. at 64.

The court acknowledged that its previous decision in Reynolds v. Bement, 36 Cal. 4th 1075 (2005), applied the common law standard of employment to a section 1194 case, but stated that Reynolds "properly holds that the IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency."  Martinez, 49 Cal. 4th at 66 (citing Reynolds, 36 Cal. 4th at 1086).  But the court in Martinez also left open personal liability on the basis of a "joint employer" theory by exercising control over working conditions, though not finding it present in the facts presented in that case.  Id. at 75-76.

Here, Plaintiffs argue both that the individual defendants are joint employers and are persons who caused violations under Labor Code section 558.  (Mot. Remand at 6-7 (citing Compl. ¶¶ 81-83, 85-89).)  While the complaint is not very explicit about its joint employer theory, it does allege against all three California Defendants that they were personally and directly involved in the independent contractor agreements and settlement attempts with Plaintiffs that Plaintiffs allege violated California's Labor Code. Plaintiffs also allege these Defendants had some kind of

15

supervisory or managerial role in the terminals in which Plaintiffs worked.

Further, claims under section 558 are available in a PAGA action, and the section contemplates holding individuals liable: "Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows[.]" Cal. Labor Code § 558(a); see Sarmiento v. Wells Fargo Bank, N.A., No. CV 15-01181-RGK (PLA), 2015 WL 1756833, at *2-4 (C.D. Cal. Apr. 17, 2015); Velasquez v. HMS Host USA, Inc., No. 2:12-cv-02312-MCE-CKD, 2012 WL 6049608, at *3-5 (E.D. Cal. Dec. 5, 2012).

There may be a question, raised by Defendants in their brief, as to whether these three Defendants qualify as persons acting on behalf of an employer who caused the violations, particularly if they are not high-level employees or otherwise satisfy the definition of "employer" from Martinez. (See Opp'n at 10-12.)[4] But that is a question resolved in Plaintiffs' favor at this pleading stage, and which again cuts against finding federal jurisdiction here because these Defendants *could* be liable as individuals under section 558 as well as if they are found to be "joint employers." Therefore, the Court does not find these

---

[4] Defendants allege that Defendants Moreno and Kotaka were not addressed in the notice letter to the LWDA and thus they lacked notice of their potential liability. This would not resolve the diversity jurisdiction issue because there would still be one nondiverse Defendant, Rodriguez, who was addressed in the letter.

16

Defendants were fraudulently joined and remands on this independent basis as well.

### 5. Costs on Remand

As established by the all the uncertainty in the law from the amount in controversy to sham defendants, this is not a case where Defendants' removal was a dilatory tactic or plainly against binding authority. Therefore, Plaintiffs' request for attorneys' fees and costs is denied.

## IV. CONCLUSION

For all the above reasons, the Court GRANTS Plaintiffs' Motion to Remand. The request for fees and costs is DENIED. Defendants' Motion to Transfer Venue is DENIED as moot. The later-noticed Motion to Dismiss (Dkt. No. 12) is VACATED as moot. The case is REMANDED.

IT IS SO ORDERED.

Dated: April 7, 2016

DEAN D. PREGERSON
United States District Judge

17